# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| MARY CASEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 08-00201-CV-W-DGK ) |
| COVENTRY HEALTH CARE OF KANSAS, INC., | ) ) ) ) |
| Defendant. | ) |

## ORDER

Pending before the Court are Plaintiff Mary Casey's Motion for Partial Summary Judgment (Doc. 12) and Defendant Coventry Health Care of Kansas Inc.'s ("Coventry") Motion for Summary Judgment (Doc. 15). Both Motions are fully briefed and ripe for ruling. Plaintiff also filed a Second Statement of Uncontroverted Facts (Doc. 21) in connection with its Opposition to Defendant's Motion. For the following reasons, Plaintiff's Motion (Doc. 12) is GRANTED and Coventry's Motion (Doc. 15) is DENIED.

## Factual and Procedural Background

Plaintiff brought this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et. seq., alleging that Coventry imposed insurance obligations that violated the governing plan documents and Missouri Code of State Regulation 20 C.S.R. § 400-7.100 ("the Regulation"), which provides:

> A health maintenance organization (HMO) may require copayments of its enrollees as a condition of the receipt of specific health care services. An HMO may not impose copayment charges that exceed fifty percent (50%) of the total cost of providing any single service to its enrollees, nor in the aggregate more than twenty

> percent (20%) of the total cost of providing all basic health services. An HMO may not impose copayment charges for basic health care services on any enrollee in any calendar year after the copayments made by the enrollee in that calendar year for basic health care services total two hundred percent (200%) of the total annual premium which is required to be paid by, or on behalf of, that enrollee and shall be stated as a dollar amount in the group contracts. Copayments shall be the only allowable charge, other than premiums, assessed to enrollees for basic and supplemental health care services. Single service copayment amounts shall be disclosed either as a percentage or as a stated dollar amount in the evidence of coverage. For group contracts the copayment amount may be changed only on the anniversary date of the group contract except by mutual agreement of the parties to the contract.

20 C.S.R. § 400-7.100.

Through her husband's employer, Casey is enrolled in a Coventry-administered health maintenance organization ("HMO") plan that provides medical benefits for employees and their dependents. Casey alleges that Coventry has failed to comply with the Regulation by charging "coinsurance" rather than a "copayment" to its members. Coventry asserts that, in the health care industry, the terms "copayment" and "coinsurance" are synonymous. Coventry also contends that the Missouri Department of Insurance ("MDI") has approved its practice of charging a percentage "coinsurance." Plaintiff contends that the Regulation is unambiguous and calls for copayments, not coinsurance. Plaintiff also asserts that the Regulation allows copayment amounts to be disclosed either as a percentage or as a stated amount, but not both.

**Standard of Review**

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must scrutinize the evidence in

the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991) (citation omitted).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248.

**Undisputed Facts**

Casey received health insurance through a Coventry HMO plan from June 1999 through August 2007. Casey's first claim for benefits involving a coinsurance payment under the HMO plan was in June 2004. The relevant Evidence of Coverage ("EOC") is a detailed plan document that defines both coinsurance and copayments. Coinsurance is defined as a "[c]ost sharing arrangement in which the Member pays a specified percentage of the cost for a Covered Service." EOC at p. 10. Copayment is defined as a "[c]ost sharing arrangement in which the Member pays a specified dollar amount as their share of the cost for a Covered Service." EOC at p. 10. The EOC also provides that "[a] Copayment is defined as a dollar amount, while Coinsurance is typically defined as a percentage of Eligible Expenses." EOC ¶ 2.10 at p. 24.[1]

---

[1] Plaintiff denies this fact. *See* Doc. 20, ¶ 10. In denying the EOC language that is plainly supported by the record, Plaintiff is attempting to "avoid admitting that which is uncontestable." *Portis v. City of Chicago*, 510 F. Supp. 2d 461, 464-65 (N.D. Ill. 2007). Plaintiff instead argues over the meaning of the terms. This type of legal argument is properly submitted in the suggestions in opposition to Coventry's motion. It is "inappropriate to deny true and accurate statements of fact simply because the Plaintiff disagrees with the form presented" *Giglio v. Derman*, 560 F. Supp. 2d 163, 166-67 (D. Conn. 2008).

Coventry explains a detailed review process of its EOC by the MDI in which Coventry submits the plan to the MDI, the MDI reviews and comments on the plan on a provision-by-provision basis, Coventry provides a specific provision-by-provision response, Coventry and the MDI consult in person regarding the plan, and the MDI either accepts or rejects the plan. Coventry submitted the EOC at issue to the MDI for approval on May 24, 2004. After engaging in the process outlined above, the MDI approved the EOC on September 7, 2004. The MDI did not criticize Coventry's inclusion of the coinsurance terms.

Coventry charged Casey both a copayment and a coinsurance charge for the same procedure on several health care services that she received. Casey contends that these dual charges violate the Regulation, while Coventry asserts that the EOC and the Schedule of Benefits ("SOB") both provide for the dual billing. Through counsel, Casey sent a letter to Coventry on September 6, 2007 opposing the imposition of both a copayment and coinsurance for a single service. Coventry responded to Casey's letter, noting that it was not treating the letter as an appeal, but as a request for information, and provided some of the information requested. On September 24, 2007 Casey sent another letter purporting to be an appeal, despite the lack of an adverse benefits determination. Coventry denied Casey's appeal on October 22, 2007. Casey filed a second level appeal on November 12, 2007, which Coventry denied on December 12, 2007.

**Analysis**

Defendant contends that Plaintiff's claim is based entirely on semantics, and that in the health insurance industry copayment and coinsurance have identical meanings. Plaintiff claims that the Regulation clearly allows only for a copayment, not coinsurance, and that by charging both a copayment and coinsurance for a single service, Coventry violated the Regulation.

Although neither party raises preemption, the Court notes that state laws that regulate insurance are not preempted by ERISA. *United of Omaha v. Bus. Men's Assurance Co. of Am.*, 104 F.3d 1034, 1039-40 (8th Cir. 1997) ("Regulation of the insurance industry may exist both in ERISA and in state law."). Thus the issue here is simply one of regulatory interpretation.[2]

"Whether interpreting federal or state law, a federal court's analysis of a statute must begin with the plain language." *In re M & S Grading, Inc.*, 457 F.3d 898, 901 (8th Cir. 2006); *accord State ex rel. Nixon v. Alternate Fuels, Inc.*, 181 S.W.3d 177, 181 (Mo. Ct. App. 2005) ("[W]e interpret the express language of the statute consistent with its plain and ordinary meaning whenever possible.") (citing *Dir., Mo. Dep't of Pub. Safety v. Murr*, 11 S.W.3d 91, 96 (Mo. Ct. App. 2000)). The Court's primary objective in construing the Regulation "is to ascertain the intent of the legislature by looking at the language of the statute itself and giving it its plain, ordinary and commonly understood meaning." *In re M & S Grading, Inc.*, 457 F.3d at 901; *accord State ex rel. Nixon*, 181 S.W.3d at 181 ("Our purpose is to ascertain the legislative intent when construing statutes.") (citing *Murr*, 11 S.W.3d at 96).

There are two main issues framed by the parties: (1) has Coventry violated the Regulation by using either a percentage or a flat fee cost-sharing arrangement, which Coventry refers to as coinsurance and a copayment respectively, and (2) has Coventry violated the Regulation by charging both a copayment and coinsurance for the same single service. The Court considers these issues in turn.

---

[2] Regulations are subject to the same principles of construction as statutes. *Teague v. Mo. Gaming Comm'n*, 127 S.W.3d 679, 685 (Mo. Ct. App. 2003).

A. **Does Coventry's Use of Both a Coinsurance (percentage) Fee Sharing Arrangement and a Copayment (flat fee) Fee Sharing Arrangement Violate the Regulation?**

Coventry argues that in the insurance industry, copayment and coinsurance are interchangeable terms. Coventry's own EOC, however, contains separate definitions for each term. Merriam-Webster's dictionary defines copayment as "a fixed fee required by a health insurer (as an HMO) to be paid by the patient at the time of each office visit, outpatient service, or filling of a prescription." It does not contain a definition for coinsurance that applies to the health care industry. Although Plaintiff refuses to admit that copayment and coinsurance are used interchangeably in the health insurance industry, Coventry has produced evidence of the terms' coextensive use, and Plaintiff's mere objection, without any evidence to rebut Coventry's, is insufficient to establish that the terms have different meanings within the industry. It seems apparent that both terms are used to indicate the portion of an insured's services for which the insured will be responsible.

Looking at the plain language of the regulation, it appears that Plaintiff's position that coinsurance, as Coventry has defined that term, is a violation of the Regulation places form over substance. The Regulation provides that "[c]opayments shall be the only allowable charge, other than premiums, assessed to enrollees for basic and supplemental health care services. Single service copayment amounts shall be disclosed either as a percentage or as a stated dollar amount in the evidence of coverage." Coventry's use of the term coinsurance to distinguish situations in which a percentage, rather than a flat fee, would be imposed does not violate the Regulation. Coventry is basically using the term coinsurance as a subset of the copayment contemplated by the Regulation. So long as Coventry is charging a disclosed amount for services, the fact that it is distinguishing between a flat fee and a percentage of cost by using the terms copayment and coinsurance does not violate the Regulation.

Several factors support such an interpretation. First, the MDI's regulations indicate that copayment and coinsurance are used coextensively. In its instructions for filing an annual report, the MDI defines "Deductibles/Co-payments" as the "[t]otal amount of payments made by enrollees in the form of any required co-payment or coinsurance." *See* http://www.insurance.mo.gov/Contribute%20Documents/2008HMOAnnualandQuarterlySuppReportInstructions.pdf at p. 9 (April 23, 2009). The legislative history of the Regulation also supports this view. The Regulation, then numbered 4 CSR 190-15.190, initially required the copayment to be "stated as a specific dollar amount." 12 Mo. Reg. 22 at 1685 (Nov. 13, 1987). During the notice and comment period, the Department received several comments that under federal law, a percentage copayment was allowed. 13 Mo. Reg. 7 at 515 (April 1, 1988). The next version of the Regulation provided that "[s]ingle service copayment amounts shall be disclosed either as a percentage or as a stated dollar amount." 14 Mo. Reg. 17 at 1134 (Sept. 1, 1989). Clearly, a percentage copayment is allowable under the Regulation. The fact that Coventry is calling a percentage copayment "coinsurance" does not change this fact.

Thus, the Court finds that Coventry's identification of a patient's charge for services by either the term copayment or the term coinsurance depending on whether the patient's share would be a flat fee or a percentage does not violate the Regulation.

B. **Has Coventry Violated the Regulation by Charging Both a Coinsurance (percentage) and a Copayment (flat fee) for the Same Single Service?**

The Court then looks to whether Coventry's billing practice of charging both a copayment and a coinsurance amount for the same single service violates the Regulation. It is undisputed that on several occasions, Coventry charged Casey both a coinsurance amount and a copayment amount for the same service. For example, on June 28, 2004 Coventry charged a copayment of $250 and coinsurance of $66.90 for the same service Casey received at St. Luke's Hospital. Casey contends that this "double billing" is not permitted under the Regulation.

1. **The Plain Language of the Regulation**

The Regulation provides that "[s]ingle service copayment amounts shall be disclosed either as a percentage or as a stated dollar amount in the evidence of coverage." Based on this plain language, it seems clear that Coventry may charge either a percentage fee (i.e., coinsurance) or flat fee (i.e., a copayment) for a single service, but not both. Coventry, relying on *Hawkins v. Hawkins*, 511 S.W.2d 811, 812 (Mo. 1974) (*en banc*), contends, however, that "or" should not be read to mean "or" but instead should be interpreted as "and" in order to effectuate the legislative intent. Coventry ignores much of the discussion in *Hawkins*, however, in an attempt to support its position. The *Hawkins* court first noted that "the word 'or' is disjunctive in its nature and in its ordinary sense marks an alternative which generally corresponds to the word 'either,'" *id.* (citations omitted), and that "'the ordinary interpretation given to the word 'or' is not as a conjunctive; . . . and it never means 'and' unless the context requires such construction.'" *Id.* (noting also that "'[o]rdinarily the words 'and' and 'or', are in no sense interchangeable terms.'") (quotation omitted).

Here, there is nothing in the context of the Regulation that requires one to substitute "and" for "or" – it seems clear that the Regulation requires the disclosure of a single service charge as

*either* a percentage *or* a flat fee, but not both. Coventry's argument that the legislative history supports such a reading is not persuasive – there is no indication that the intent was to allow both a percentage fee and a flat fee for a given service – the mere fact that the Regulation authorizes either a percentage or a flat fee does not mean that it authorizes both, as Coventry argues.

### 2. Has the MDI Interpreted the Regulation Such that Deference is Appropriate?

Coventry next argues that because the MDI approved the Statement of Benefits at issue here, which discloses that in certain situations a patient may be responsible for both a copayment and a coinsurance charge, the MDI has approved that practice, and the Court should defer to the MDI's decision. The Court first notes that Coventry has provided no support for its position that the MDI's approval of its forms constitutes an interpretation of the Regulation. The Court does not agree with Coventry that the MDI has somehow implicitly interpreted the Regulation simply by approving its forms, and to the extent that such implicit approval could be inferred, the MDI would be approving Coventry's interpretation, not issuing its own interpretation. The deference a court affords an agency's interpretation depends both on the legal authority being interpreted and the manner in which the agency issues that interpretation. *See, e.g.*, *Glover v. Standard Fed. Bank*, 283 F.3d 953, 961-62 (8th Cir. 2002) (discussing degree of deference given to formal and informal agency interpretations of congressional statutes and agency promulgated rules).

Even assuming that the MDI's approval of Coventry's forms could be construed as an interpretation of the Regulation, the Court is far from convinced that it should be afforded substantial deference. "Although substantial deference is due an agency's interpretation of its regulations, no deference is due if the interpretation is contrary to the regulation's plain meaning." *In re Old Fashioned Enters., Inc.*, 236 F.3d 422, 425 (8th Cir. 2001) (citing *Shalala v. St. Paul-*

*Ramsey Med. Ctr.*, 50 F.3d 522, 528 (8th Cir. 1995)). Deference is due only when "'an agency has developed its interpretation contemporaneously with the regulation, when the agency has consistently applied the regulation over time, and when the agency's interpretation is the result of thorough and reasoned consideration.'" *Solis v. Summit Contractors, Inc.*, 558 F.3d 815, 823 (8th Cir. 2009) (quoting *Advanta USA, Inc. v. Chao*, 350 F.3d 726, 728 (8th Cir. 2003)); *see also King v. Morrison*, 231 F.3d 1094, 1097 (8th Cir. 2000) (recognizing that an agency program statement that had never been subject to the rigors of notice and comment would not be entitled to substantial deference and collecting cases). Moreover, informal interpretations by an Agency, such as policy statements, agency manuals, and enforcement guidelines, are "'entitled to respect . . . only to the extent that those interpretations have the 'power to persuade.'" *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Because the asserted interpretation conflicts with the plain language of the Regulation, it cannot be said to have the power to persuade. *See Shalala v. St. Paul-Ramsey Med. Ctr.*, 50 F.3d 522, 528 (8th Cir.1995) (finding Secretary's interpretation of "binding" rule invalid where "plainly erroneous or inconsistent" with the text of the rule).

Thus, the Court finds that Coventry's practice of charging both a copayment and a coinsurance amount for the same single service violates the Regulation.

## Conclusion

For all the above reasons, the Court finds that Coventry's practice of charging both a copayment and a coinsurance amount violates Missouri Code of State Regulation 20 C.S.R. § 400-7.100. Therefore, Casey's Motion for Partial Summary Judgment is GRANTED and Coventry's Motion for Summary Judgment is DENIED. By June 19, 2009, the parties shall file a joint notice

regarding the remaining issues for the Court to determine and a proposed schedule for their resolution.

IT IS SO ORDERED.

      /s/ Greg Kays
     GREG KAYS, JUDGE
     UNITED STATES DISTRICT COURT

DATED:  June 9, 2009