# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

|  |  |
|---|---|
| MARY CASEY, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Cause No.: 08-0201-CV-W-DGK |
| vs. | ) |
| | ) |
| COVENTRY HEALTHCARE OF KANSAS, INC. | ) |
| | ) |
| Defendant. | ) |

## APPLICATION FOR ATTORNEY FEES BY ATTORNEYS FOR PLAINTIFFS

Class Counsel applies to the Court for an aggregate award of statutory attorney's fees, litigation expenses, and court costs related to the Settlement, of $470,894.07 ($450,000 in hourly fees and $20,894.07 in costs). Subject to Court approval, Coventry has agreed to such fee and cost award and does not object to such fee application.[1] This Court indicated in its Order Denying Approval of Class Settlement (Doc. 142) that, "In particular, the Court has no objection to the award of attorney's fees, the incentive award to the class representative, or a settlement agreement that limits Defendant's liability to $1.4 million." (Doc. 142).

Class Counsel respectfully request that the Court approve payment of their reasonable attorneys' fees, costs and expenses in the amount of $470,894.07, which was agreed to between the Parties after good faith, arm's length negotiations which occurred after the other terms of the Settlement Agreement were reached.

There are two primary methods for calculating attorneys' fees in a class action

---

[1] The same amount of fee application was submitted in the original settlement. Since then significant work has been conducted to enhance the settlement and make it a better financial outcome for the class members. However, Class Counsel has not increased the amount of fees that they are seeking.

such as this one: the percentage-of-recovery method and the lodestar method. *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 17535 (D. Minn. 2008) (citing *Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.)*, 243 F.3d 722, 732 (3d Cir. 2001). The percentage-of-recovery method is generally favored in cases involving a common fund, while the lodestar method is more commonly applied in statutory fee-shifting cases. *Cedant*, 243 F.3d at 732 (quoting *Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998))..

ERISA, 29 U.S.C. § 1132(g)(1), authorizes an award of reasonable attorney's fee and costs. Because ERISA is remedial legislation, which should be liberally construed to effectuate Congressional intent to protect employee participants in employee benefit plans, a district court should consider those purposes in awarding attorney's fees under ERISA. Although there is no presumption in favor of attorney fees in an ERISA action, a prevailing plaintiff rarely fails to receive fees. *Starr v. Metro Sys., Inc.*, 461 F.3d 1036, 1041 (8th Cir. 2006) (*citing Martin v. Arkansas Blue Cross & Blue Shield*, 299 F.3d 966, 972 (8th Cir. 2002) (en banc)).[2]

---

[2] This Circuit has set forth five non-exclusive of factors for consideration: (1) the degree of culpability or bad faith of the opposing party; (2) the ability of the opposing party to pay attorney fees; (3) whether an award of attorney fees against the opposing party might have a future deterrent effect under similar circumstances; (4) whether the parties requesting attorney fees sought to benefit all participants and beneficiaries of a plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *See Starr,* 461 F.3d at 1041. The court need not make a finding of bad faith in order to award fees under ERISA. Thus, in *Starr*, which was not a class action, the Eighth Circuit held that the lower court abused its discretion in failing to award fees to a prevailing party under ERISA, given the remedial nature of ERISA legislation, and the need for ERISA litigants to have effective access to the courts to vindicate their rights. *Id.*

Thus, under both the class action and ERISA cases in this Circuit, an award of attorneys fees using either method is appropriate.

### A. Five factors for considering an ERISA fee award

This Circuit has set forth five non-exclusive factors for consideration of fee awards: (1) the degree of culpability or bad faith of the opposing party; (2) the ability of the opposing party to pay attorney fees; (3) whether an award of attorney fees against the opposing party might have a future deterrent effect under similar circumstances; (4) whether the parties requesting attorney fees sought to benefit all participants and beneficiaries of a plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *See Starr,* at 1041.

Defendant has agreed not to oppose a fee award so long as it does not exceed $450,000 as well as agreeing to pay $20,894.07 in costs. Thus, given Defendant's agreement to pay the fee and costs sought, this Court does not even need to consider the five factors. *See* Fed. R. Civ. P. 23(h) (attorney's fees may be authorized by agreement). Moreover, consideration of these five factors clearly weighs in favor of an award of attorney's fees to the Settlement Class.

#### 1. Culpability

Courts have held that a non-prevailing party may be "culpable" notwithstanding it did not act with an ulterior motive or malicious intent. *Id.* Here, Defendant's conduct was sufficiently culpable so that the first factor favors an award of fees to the Settlement Class. Defendant violated the copay regulation by charging both a copay and

3

coinsurance for the same service to Mary Casey. *Starr* makes clear that a Court considering an award of fees need not make a finding of bad faith in order to award fees under ERISA, and held that the lower court abused its discretion in failing to award fees to a prevailing party under ERISA given the remedial nature of the statute, and the need for ERISA litigants to have effective access to the courts to vindicate their rights. *Id.*

### 2. Ability to Satisfy the Award

Defendant is able to satisfy the requested award here, as evidenced by the fact that it does not oppose the request and has agreed to pay the award. This factor clearly supports awarding the requested fee.

### 3. Deterrence

A fee award will deter other HMOs from failing to comply with the limits imposed by Missouri's copayment regulation. In fact, a fee award may be the only true deterrent. *McPherson v. Employees' Pension Plan*, 33 F.3d 253, 257 (3d Cir. 1994) (discussing deterrence factor); *Varhola v. Doe*, 820 F.2d 809, 817 (6th Cir. 1987). *See also Unitis v. JFC Acquisition Co.,* 643 F. Supp. 454, 463 (N.D. Ill. 1986) (noting deterrent effect of fee award.).

### 4. Benefits Were Conferred on Members of all Employer-sponsored Health Plans Insured by Defendant

As a result of Class Counsel's efforts, Defendant has agreed to put controls in place to prevent it from imposing both a copay and coinsurance for the same service in the future and to provide the refunds specified in the Settlement Agreement. These benefits will flow to all persons who have or had coverage

under a fully-insured HMO health plan issued by Defendant.

### 5. Relative Merits of the Parties' Position

Although Defendant denies liability and believes it might prevail on appeal, this Court did rule on the relative merits of the parties' positions and found that Defendant was violating the copay regulation. However, Plaintiff recognizes there is a risk of the Court of Appeals making a different decision and therefore took this risk into consideration during settlement negotiations.

Thus, under both the class action and ERISA cases in this Circuit, an award of attorney's fees is appropriate.

### B. Class Counsel's Fee Request is Appropriate Under the Lodestar Method.

Another approach in an ERISA case for analyzing a request for attorney fees by plaintiffs' counsel in a class action is the "lodestar" methodology, under which the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action. *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996). The fees can be adjusted up by using a multiplier of the rate times hours result. Class Counsel is not seeking such a multiplier here. Class Counsel, through January 27, 2011 has accumulated the following time and expenses:

Ralph K. Phalen, 318.7 hours at $525/hour

McGonagle Spencer, P.C., 751.85 hours at $450/hour

The firms also incurred $20,894.07 in expenses.

5

The total fees and expenses incurred by Class Counsel through January 27, 2012 was $526,544.07. Class Counsel anticipates there will be more time expended following up on the claims process and the dissemination of money to claimants. This request does not include any of that time. Plaintiff's counsel reached agreement with Defendant for the fee amount of $450,000 which was a significant decrease in the total time that will be incurred before a final approval of this Settlement.

Similar hourly rates have been approved for Class Counsel in other litigation in past years and the time expended was based on contemporaneous time records. Ultimately, the parties reached agreement on fees at something less than the lodestar, and Class Counsel does not seek a multiplier.

This Circuit has also established factors that a court should examine in determining both the reasonableness of a lodestar award, and the use of a multiplier to enhance the award. *Allen v. Tobacco Superstore, Inc.,* 475 F.3d 931 (8th Cir. 2007), *relying on*, *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases. *Johnson,* 488 F.2d at 717–19.

### 1. The Time and Labor Required, the Difficulty of the Questions Involved, and the Skill Required to Litigate the Case.

The record of this case amply establishes the significant time and labor required to litigate these cases. Since the initiation of this litigation, Plaintiffs' counsel researched and drafted the pleadings to assert claims under ERISA, researched the unique issues pertaining to this litigation, conducted numerous depositions of Defendants' employees, propounded and responded to written discovery requests, analyzed numerous documents, briefed numerous motions and responses, including motions to dismiss and motions for summary judgment, class certification and appeal of class certification, and engaged in extensive settlement negotiations that resulted in substantial relief for the Settlement Class.

Additional time and expense will be incurred, including handling future inquiries from Settlement Class Members and assisting Settlement Class Members and handling the legal proceedings necessary to gain approval of the Settlement Agreement and to implement the Settlement Agreement.

This case presented difficult questions, which required commensurate skill to litigate the case properly. The case raised fact-intensive issues regarding the application of the copayment regulation and provisions and operation of ERISA plans administered by Defendant, that were investigated.

### 2. The Experience, Reputation and Ability of the Attorneys.

The firms involved in this litigation have the experience, reputation, and ability to litigate complex class cases. Class Counsel involved in this litigation have vast experience in consumer fraud, ERISA and class action litigation which served the Class

well, as demonstrated by the results they achieved with the settlement.

### 3. The Preclusion of Other Employment by the Attorneys Due to Acceptance of the Case.

The efforts of Class Counsel in the management of this class action necessarily infringed upon the time and opportunity they would have had available to accept other employment. The time and energy devoted to this litigation necessarily limited the time and energy available for other litigation.

### 4. The Customary Fee; Awards in Similar Cases.

An action of this complex nature is a "make or break" venture for which compensation should bear a reasonable relationship to the success of the venture when compared to the risks undertaken, particularly in the legal atmosphere for plaintiff lawyers in a class action context. It is also significant that the amount sought comports with the standard fees in the marketplace. *See, e.g., In re Continental Illinois Sec. Litig.,* 962 F.2d 566, 572 (7th Cir. 1992) ("The object in awarding a reasonable attorneys' fee . . . is to simulate the market."). The requested fees, costs and expenses are standard and routine in cases of this difficulty and have been approved in other cases. Specifically, similar rates for counsel were approved by a federal court in Florida as recently as August 2008 and Missouri cases in 2009, 2010 and 2011. Thus, the requested fee is entirely appropriate and within the range of those typically awarded.

### 5. Whether the Fee is Fixed or Contingent.

This case was prosecuted by Class Counsel on a purely contingent basis, and they assumed the risk of no payment for a considerable amount of work over an extended period of time. Thus, the contingency risk in this case was substantial. "A contingency

fee arrangement often justifies an increase in the award of attorneys' fees." *In re Sunbeam* 176 F. Supp. 2d at 1335 (quoting *Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)). Class Counsel spent considerable time advancing this case without any compensation for their time and without knowing whether their time would ever be compensated.[3] This risk is perhaps the foremost factor in determining an appropriate fee award. *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) (quoting *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 54 (2d Cir.2000): *See Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir.1981); *Ressler v. Jacobson,* 149 F.R.D. 651, 656 (M.D.Fla.1992); *Walters v. Atlanta,* 652 F.Supp. 755, 759 (N.D.Ga.), *modified,* 803 F.2d 1135 (11th Cir.1986); *York v. Alabama State Bd. of Educ.,* 631 F.Supp. 78, 86 (M.D.Ala.1986).

### 6. The Amount Involved and the Results Obtained.

The result achieved is a major factor to consider in making a fee award. *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983) ("critical factor is the degree of success obtained"); *Behrens*, 118 F.R.D. at 547-48 ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."). Moreover, when determining the total value of a class action settlement for purposes of calculating the attorneys' fee award, courts usually consider not only the compensatory relief, but also the economic value of any prospective injunctive relief obtained for the class. *See, e.g., Staton v. Boeing, Co.,* 327 F.3d 938, 974 (9th Cir. 2003) ("courts should consider the value of the injunctive relief obtained as a relevant circumstance in determining what percentage of the common fund Class Counsel should receive as attorneys' fees").

---

[3] Unlike a typical contingency case in which class counsel reaps the benefits of risking time, effort and fronting costs to retain the right to seek a significant percentage of the claim amount, class counsel in an ERISA case, risks time, effort and expenses in hopes of retrieving their hourly fee.

Here, the results obtained well support Class Counsel's fee request. The entire Class will receive notice and be entitled to receive a reimbursement of the amounts paid that Plaintiff contends violated the copayment regulation, as set forth in the Settlement Agreement, and assurances that such violations will in the future cease. Moreover, Defendants has paid for notice to all members of the Class and will pay for all costs associated with the claims process separate from the relief being paid to the class.

### 7. The Undesirability of the Case.

"A court's consideration of this factor recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk. Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is enveloped by the term 'undesirable.'" *In re Sunbeam,* 176 F. Supp. 2d at 1336. Here, not only was the financial outcome uncertain, but the representation involved bringing claims that were difficult and risky. No counsel was willing to assume this representation, as evidenced by the fact that Defendant's practices were in place for years and no other litigation or attempt to create compliance had been instituted. This represents yet another factor warranting the requested award of fees, costs and expenses.

### 8. Time Limitations Imposed by the Client or the Circumstances.

As the Court is well aware, this case has required almost continuous attention by various Class Counsel for several years. Frequently, issues required immediate attention and completion within a very short period of time, and Class counsel responded accordingly.

### 9. The Nature and Length of the Professional Relationship with the Client.

Representative Plaintiff has been a client for over four (4) years. She has actively participated in the litigation and was available to help whenever needed, including giving her deposition. Ms. Casey was kept abreast of the developments throughout this litigation.

Thus, application of the *Johnson* factors supports an award of fees and costs to Class Counsel in the amount of $470,894.07, which is less than the actual lodestar, but which is an amount that Coventry has agreed is reasonable.

### C. Class Counsel's Fee Request Also Is Appropriate Under the Common Benefit Doctrine.

Plaintiff's fee request is the amount of $450.000,00. When determining the total value of a class action settlement for purposes of calculating the attorneys' fee award, courts usually consider not only the compensatory relief, but also the economic value of any prospective injunctive relief obtained for the class. *See, e.g., Staton v. Boeing, Co.,* 327 F.3d 938, 974 (9th Cir. 2003) ("courts should consider the value of the injunctive relief obtained as a relevant circumstance in determining what percentage of the common fund Class Counsel should receive as attorneys' fees"). The value of the settlement is over 1.4 million dollars plus the value of Coventry agreeing not to impose both a copayment and coinsurance for a single health service in the future. Plaintiff values such injunctive relief at 2.5 million dollars (extrapolating the amount saved by class members for a five (5) year period in the future). While this is not a classic common fund case, because the fees are being paid separately from the amount available to the class, the analysis is

helpful. Another district court in this Circuit has observed that many class action cases have awarded attorney fees between 25% and 35% of a common fund. *See In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 17535 * 36 (D. Minn. 2008).

It is a generally accepted principal that an attorney whose work creates a common fund is "entitled to a reasonable fee … taken from the fund." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47, Fed. Sec. L. Rep. (CCH) ¶90919 (2d Cir. 2000) *See also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (noting that common fund cases are the exception to the general rule that litigants pay their own expenses and citing numerous court opinions to support this proposition). However, no general rule can be articulated on what is a reasonable percentage of a common fund.

A court may use its discretionary powers to determine what is a reasonable and fair award from a common fund, where the fund itself represents the benchmark from which reasonableness is measured. Usually 50 per cent of the fund is the upper limit on a reasonable fee award from a common fund, in order to assure that fees do not consume a disproportionate part of the recovery obtained for the class, though somewhat larger percentages are not unprecedented. *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*, 480 F. Supp. 1195 (S.D. N.Y. 1979), judgment aff'd, 622 F.2d 1106, 6 Fed. R. Evid. Serv. 214 (2d Cir. 1980) (approximately 53% of settlement fund awarded). *See also Greene v. Emersons Ltd.*, Fed. Sec. L. Rep. (CCH) ¶93263, 1987 WL 11558 (S.D. N.Y. 1987) (securities) (46.2% of common fund awarded).

Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the

recovery. *See McNeely v. National Mobile Health Care, LLC*, 2008 WL 4816510 at *15 (W.D. Okla. 2008) (quoting *Newberg on Class Actions*) (certifying a class of nursing home residents who had allegedly been deceived by the defendant insurance company, and preliminarily approving the settlement and fee request of plaintiffs' counsel, pending a full fairness hearing); *In re Top Tankers, Inc. Securities Litigation*, 2008 WL 2944620 at *13 (S.D. N.Y. 2008) (quoting *Newberg on Class Actions*) (approving settlement and attorney's fees agreement).

Turning to this case, the settlement in this case is a result of arm's length negotiations in which the terms of settlement were determined prior to discussion regarding attorneys' fees. This case offers relief to thousands of class members. The funds available to the class, excluding attorneys fees and costs will result in a Net Settlement Fund of $1,000,000 ($947,757 disbursed to the class members, $7,500 to Class Representative and $44,743.00 for class notice and administrative costs).

Additionally, this Court has indicated that it does not object to an award of attorney's fees in this matter. Such fees and costs are not part of the Net Settlement Fund and will therefore be paid separate from the amount utilized to pay each of the approximately 87% of the class members who will receive refund checks.

The fee request of $450,000.00 will be less than the amount of hourly fees and expenses incurred in litigation and is consistent with class action fees in similar cases**.**

The fees to be paid by Coventry are not from any common fund and are paid separate from the Class settlement. That is to say, attorney fees will not be paid out of the settlement monies to the class but are separate and would not, and did not, reduce

13
Case 4:08-cv-00201-DGK   Document 149   Filed 02/06/12   Page 13 of 20

the money available to the Class.  Additionally, Class Counsel is not seeking payment on any additional hours worked negotiating and finalizing a better settlement for the class since September 2011.

Hourly rates similar to those provided to the Court in the fee application were granted in *Starbird v. Mercy Health Plans, Inc.; Case No. 4:07-cv-1050 CAS.*  In *Starbird*, attorney Phalen's rate was $500.00 and attorney Spencer was $400.00.  *Starbird* was a similar case in that Defendant imposed upon its members excess copayments.[4]  Here, as there, Defendants do not oppose the rates sought by Class Counsel.  Similar requested rates have been approved by other federal courts.  In August 2008, Judge Merryday from the United States District Court for the Middle District of Florida approved rates of $450 per hour for attorney Phalen and $350 per hour for attorney Spencer in *Lockwood v. Certegy Check Services, Inc., No. 8:07-cv-01434-SDM-TGW (M.D. Fla.)*.  In May 2009, Judge Mummert approved rates of $450 per hour for attorneys Phalen and $350 per hour for attorney Spencer in *Vermiglio v. Group Health Plan, Inc. No. 4:07-cv-00282*.  Similarly, Judge Laughrey approved a rate of $500.00 with a multiplier of 2.3 in Wiles v. Southwestern Bell d/b/a ATT.  The hourly rates utilized in calculating the lodestar for Class Counsel are in line with the rates awarded by district courts for experienced attorneys in specialized fields, including ERISA cases.  For example, in June 2008, the Eastern District of Pennsylvania awarded fees of up to $500 per hour in an ERISA class action.  *See In re Unisys Corp. Retiree Medical Benefits ERISA Litigation, 2008 WL 2600364 (E.D. Pa. June 26, 2008).  See also Hawkins-Dean*

---

[4]  Such amount was less than the hourly fee requested by attorneys after all the work for the class members was finalized.  Similarly, in the instant case, attorneys will receive an amount less than the hourly fee requested.

*v. Metropolitan Life Ins. Co.*, 2007 WL 2735685 at *3 (C.D. Cal. September 18, 2007)($575/hour for experienced ERISA attorney).

The rates charged by attorneys who represent Coventry in this case are also relevant. *See, e.g., Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 n. (7th Cir. 1982) ("The rates charged by defendant's attorneys provide a useful guide to rates customarily charged in this type of case."); *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1220 (8th Cir. 1981). In December 2008, the National Law Journal reported that Husch Blackwell charged up to $740/hour for partners, respectively).

An agreed upon award of attorneys' fees and expenses is proper in a class action settlement, so long as the amount of the fee is reasonable under the circumstances. *See*, FED. R. CIV. P. 23(h) (providing that "[i]n an action certified as a class action, the court may award reasonable attorney fees and nontaxable costs authorized by ... agreement of the parties ...."). In fact, courts have encouraged litigants to resolve fee issues by agreement, if possible. *Lobatz v. U.S. W. Cellular, Inc.*, 222 F.3d 1142, 1149-50 (9th Cir.2000) (affirming reasonable award of fees and expenses to be paid separate from class action settlement where defendant agreed not to oppose request up to negotiated amount); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir.1998) (upholding district court's award of attorneys' fees where Court had approved attorneys' fees and costs of $5.2 million which were negotiated after final settlement was achieved); *Malchman v. Davis*, 761 F.2d 893, 905 n. 5 (2d Cir.1985) (recognizing "[a]n agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged"), *cert. denied*, 475 U.S. 1143, 106 S.Ct. 1798,

90 L.Ed.2d 343 (1986), *abrogated on other grounds sub nom Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,* 671 F.Supp. 819, 829 (D.Mass.1987) (concluding that "[w]hether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys' fees, ideally the parties will settle the amount of the fee between themselves"). As the United States Supreme Court has explained, "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "Ideally, of course," the Court continued, "litigants will settle the amount of a fee." *Id.* The United States Court of Appeals for the Fifth Circuit has also "encourage[d] counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees." *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 720 (5th Cir.1974). Accordingly, courts are authorized to award attorneys' fees and expenses where all parties have agreed to the amount, subject to court approval, particularly where the amount is in addition and separate from the defendant's settlement with the class. *See, Local 56, United Food & Commercial Workers Union v. Campbell Soup Co.,* 954 F.Supp. 1000, 1005 (D.N.J.1997) (granting class counsel the maximum amount of fees agreed to by the defendant under the settlement agreement where "class members ... retain all that the settlement provides [and] they do not lose any of the negotiated benefits on account of an attorneys' fee and costs award that equals the 'cap' on such an award set forth in the settlement").

"As noted, Allstate, their counsel and class counsel have agreed to award class counsel a lump sum of attorneys' fees and expenses, subject to Court approval. This award of

attorneys' fees and expenses is separate and apart from the class settlement-which is not a monetary common fund-and will not in any way diminish the class settlement. Were the Court to reduce the award of class counsel's fees, this would not confer a greater benefit upon the class, but rather would only benefit Allstate. *Compare Garza v. Sporting Goods Properties, Inc.,* No. Civ. A. SA-03-CA-108, 1996 WL 56247, at *26 (W.D.Tex. Feb.6, 1996) (noting that court is responsible for applying heightened judicial scrutiny to fee request and is not bound by amount of fee award requested by counsel in common fund case) *with* ***323** *McBean v. City of New York,* 233 F.R.D. 377, 392 (S.D.N.Y.2006) (recognizing that court need not review an application for attorneys' fees with heightened level of scrutiny where, as here, parties have contracted for an award of fees which will not be paid from common fund). Furthermore, attorneys' fees were not negotiated or discussed until after the agreement was reached between the parties on all other terms of the settlement. *See, Hanlon,* 150 F.3d at 1029 (noting with approval that "class counsel and [defendant] did not negotiate or discuss attorneys' fees until after the final settlement"). These factors indicate a presumption of reasonableness in the request for an award. *See, In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.,* MDL No. 901, 1992 WL 226321, at *4 (C.D.Cal. June 10, 1992) (stating that Court should be reluctant to disturb award where class counsel negotiated fee with sophisticated defense counsel who were familiar with case, risks, amount and value of class counsel's time, and nature of result obtained for class), *appeal dismissed for class member's lack of standing,* 33 F.3d 29 (9th Cir.1994), *superseding* 19 F.3d 470 (9th Cir.). DeHoyos v. Allstate Corp. 240 F.R.D. 269, 322-323. (W.D.Tex. 2007).

The case law is clear that Class Counsels hourly rate, and agreed upon fee at a

lower rate are reasonable. As Judge Perry noted in approving the Mercy settlement and fees,

> "You know, I will note that this is a class action.
> Class actions have such a -- a bad name sometimes in the
> popular press, but this is an example of exactly what class
> actions should be, and the benefits to the Plaintiff class are
> substantial, especially in the going -- on a going forward
> basis. The bringing of this suit has benefited many people
> and will continue to do so, and just generally, I'll say that
> the attorneys' fees are reasonable based on -- when you also
> consider the -- the benefit to the class, they're very
> reasonable as they are under the other factors that
> Mr. Spencer has mentioned, so I do -- I am going to approve
> this…….. The attorneys' fees, I also will approve, and I
> believe when you consider any of the tests involved it is an
> appropriate fee. The ERISA does allow fee shifting, of
> course, in actions like this, and also, that this has been
> agreed to. It is not diminishing the class. It's not
> dependent on the payout or diminishing in any way the fund
> that will be available for the refund to the class members,
> and when you consider the factors set out by the Eighth
> Circuit, either the five factors or looking at lodestar,
> although there's no multiplier here, this is a fair and
> reasonable amount of fees. The rates are reasonable, and the
> number of hours are also."

## VIII. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court enter an order approving the fees and expenses in the combined amount of $470,894.07.

Respectfully Submitted,

McGONAGLE SPENCER, P.C.


/s/ David J. Spencer
David J. Spencer
1533 Locust St.
Kansas City, Missouri 64108
Telephone No.: (816) 221-2222
Facsimile No.: (816) 221-2245

RALPH K. PHALEN, ATTORNEY AT LAW

Ralph K. Phalen, Missouri Bar No. 36687
1000 Broadway, Suite 400
Kansas City, Missouri 64105
Telephone No.: (816) 589-0753
Facsimile No.: (816) 471-1701

ATTORNEYS FOR PLAINTIFF
MARY CASEY

# CERTIFICATE OF SERVICE

On the 6th day of February, 2012, a true and accurate copy of the above and foregoing was served via Electronic Mail to:

Michael Hargens
4801 Main Street, Suite 1000
Kansas City, Missouri 64112

Thomas M. Dee
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105

Harvey M. Tettlebaum
235 East High Street, Suite 200
P.O. Box 1251
Jefferson City, Missouri 65102

ATTORNEYS FOR DEFENDANT
COVENTRY HEALTH CARE OF KANSAS, INC.

*/s/ David J. Spencer*
David J. Spencer